# EXHIBIT A

FILED

17 JUL 07 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-17834-9 SEA

1

2

3

4

5

6

7

8

SUPERIOR COURT OF WASHINGTON
FOR KING COUNTY

9  | ERIC BISHOP,                                          | No.

10 |                         Plaintiff(s),                 | ERIC BISHOP'S COMPLAINT
   |           v.                                          | AGAINST RIDE THE DUCKS
11 |                                                       | INTERNATIONAL, LLC, a foreign
   | RIDE THE DUCKS INTERNATIONAL, LLC, a                  | company; STATE OF
12 | foreign company; STATE OF WASHINGTON;                 | WASHINGTON; and CITY OF
   | CITY OF SEATTLE; DOES I-X AND ROES I-X                | SEATTLE.
13 |                     Defendants.

14

15

16

17          Comes now, Eric Bishop, by and through his attorneys of record, The

18  Lawrence Kahn Law Group, P.S. and the Sullivan Law Group, PLLC, for causes of

19  action against the Defendants, and alleges as follows:

20                          **I.      <u>Parties to Complaint</u>**

21  1.1     Plaintiff Eric Bishop is a resident of Sumner, Pierce County, Washington.

22

23

24

25

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE     – 1 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

1.2   Defendant Ride the Ducks International, LLC ("RTD International") is a

limited liability company organized under the laws of the State of Missouri

with its principal place of business in the State of Georgia.

1.3   Defendant State of Washington is a governmental entity responsible for the

design, construction, inspection, maintenance, and operation of SR 99 within

state boundaries, including the portion of SR 99 which constitutes the Aurora

Bridge.

1.4   Defendant City of Seattle is a governmental entity responsible for the design,

construction, inspection, maintenance, and operation of SR 99 within state

boundaries, including the portion of SR 99 which constitutes the Aurora

Bridge.

## II.   JURISDICTION AND VENUE

2.1   The Superior Court of King County, State of Washington, has subject matter

jurisdiction over this action pursuant to RCW 2.08.010.

2.2   Defendant RTD International was at all relevant times conducting substantial

and continuous business in King County, State of Washington by selling

products and providing guidance and supervision to entities within this

County and State, specifically Ride the Ducks of Seattle. The State of

Washington has jurisdiction over RTD International for this claim. To the

extent RTD International defectively manufactured products in Missouri or

Georgia, this Court has the authority and jurisdiction to apply the punitive

damages laws of those states to this action. RCW 4.28.185.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 2 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

2.3   Defendant City of Seattle and Defendant State of Washington are both governmental entities of this state also subject to this court's jurisdiction.

2.3   The tragic incident which is the subject matter of this lawsuit occurred in the City of Seattle, King County, Washington.

2.4   Venue is proper pursuant to RCW 4.12.025.

2.5   On February 22, 2017, Eric Bishop filed a legally sufficient Claim for Damages in this matter with the Office of Risk Management for the State of Washington. More than 60 days have elapsed since the Claim was filed with Defendant State of Washington.

2.6   On February 24, 2017, Eric Bishop filed a legally sufficient Claim for Damages in this matter with the City of Seattle. More than 60 days have elapsed since the claim was filed with Defendant City of Seattle.

### III.   **FACTUAL BACKGROUND**

3.1   On September 24, 2015, Eric Bishop was employed by Ride the Ducks of Seattle, LLC. He was fully licensed and trained to operate the amphibious vehicles. He was also trained and performed a daily visual inspection of the vehicle he was to operate.

3.2   On September 24, 2015, while driving 36 passengers in the 1945 GMC DUKW No. 6 to which he was assigned, Eric Bishop began crossing the Washington State Route (SR) 99 Aurora Bridge, in Seattle, Washington, as was part of his route dictated by his employer.

3.3   The DUKW route was also approved by the City of Seattle.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE        – 3 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

3.4     At the same time, a 2009 MCI motor coach carrying approximately 45 to 50 passengers was traveling southbound in the center lane of SR 99, also going over the Aurora Bridge.

3.5     Mechanical failure of the left-front axle of DUKW No. 6 caused the DUKW vehicle to veer sharply left leaving the driver unable to steer the vehicle safely.

3.6     As a result of the mechanical failure, DUKW No. 6 crossed across lanes of traffic and violently crashed into the 2009 MCI motor coach.

3.7     Five passengers in the 2009 MCI motor coach died as a result; numerous other people in the crash sequence were injured.

3.8     In addition to the DUKW vehicle and motor coach, three other vehicles were damaged during the crash sequence.

3.9     The crash was not caused by any acts or omissions of Eric Bishop.

3.10    DUKW No. 6 was originally a 1945 military model. RTD International remanufactured, refurbished, and modified DUKW No. 6 and similar military vehicles to perform the new and unusual function of transporting large numbers of tourists on guided tours by road, highway, and also by water.

3.11    In approximately 2005, RTD International sold DUKW No. 6 to RTD Seattle, retaining licensing rights for five percent of all gross ticket sales from all tours operated by RTD Seattle.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 4 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

3.12   On or before October 2013, RTD International determined that the axle
housings in their manufactured, refurbished, and modified DUKWs were
subject to or in a dangerous condition.

3.13   On or about October 2013, RTD International issued a notice to purchasers,
licensees and/or joint venture/enterprise partners of approximately 57 of its
refurbished, manufactured and modified DUKW vehicles. The notice failed to
alert purchasers, licensees, and/or joint venture/enterprise partners to
immediate dangerous defects in the axle housing. The notice provided
guidance on a modification to strengthen the axle housing to prevent
fractures, but failed to provide instructions for facilitating the modification.
The notice recommended daily inspection, while acknowledging that "the
visual detection of a failing axle housing is not possible." The National Traffic
Highway Safety Board (NTSB) found that the proposed modification was not
engineered, tested or sufficient to remedy the dangerous condition.

3.14   RTD International failed to follow up. RTD International failed to implement
any policies or procedures to insure that purchasers, licensees and/or joint
venture/enterprise partners, of its refurbished, and modified DUKW products
had the tools, parts and or expertise to modify or protect against the
dangerous condition.

3.15   RTD International did not issue a recall due to the dangerous condition of its
DUKW product.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 5 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

3.16   According to the NTSB: The left front axle that failed had an earlier modification to the axle housing that had been recommended by RTD International but it did not inform anyone else of the modification.

3.17   The "earlier modification" to the axle housing was not the same recommendation outlined in the October 2013 service bulletin as a recommended fix for the DUKW.

3.18   At the time of the incident, RTD International had created and were allowing for a foreseeable and unreasonable risk of harm to Eric Bishop and everyone else on the roadway around or in the DUKW vehicles.

3.19   Eric Bishop was physically and emotionally injured in the crash, but first tended to the other injured people present before accepting aid himself.

3.20   The Aurora Bridge opened in 1932 and was listed in the National Register of Historic Places in 1982. It is 2,945 feet long, 70 feet wide, 167 feet above water, and carries State Route 99 over the northwest end of Lake Union. The six lane bridge has no median barrier and no shoulders for vehicle emergencies.

3.21   The State of Washington and the City of Seattle signed the GM-20 Maintenance Agreement on July 14, 1954, obligating the City to perform "routine maintenance" on State Highway routes within the corporate limits of the City. The agreement provides that the City may only perform work classified as "new construction, betterment, replacement or extraordinary maintenance" where the work is formally agreed to and authorized by the

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE     – 6 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA  98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

Director of Highways (whose powers functions and duties were transferred to the Washington State Department of Transportation). GM-20 Maintenance Agreement (July 14, 1954); RCW 47.01.031(2).

Upon information and belief, the Aurora Bridge is operated and maintained by the State of Washington and City of Seattle, and both are responsible for ensuring that it is reasonably safe for travel.

3.22 The bridge carries more than 80,000 vehicles daily into and out of Seattle, including local and regional bus services. It also is a significant freight corridor moving approximately 13,109,000 tons annually.

3.23 In 2007, the Federal Highway Administration National Bridge Inventory found the bridge to be "functionally obsolete."

3.24 Both the City and State knew for decades that SR 99 and the Aurora Bridge were dangerous in precisely the ways that contributed to the September 24, 2015 incident.

3.25 As the State itself has noted:

> "[The Aurora Bridge] consists of six lanes 9.5-foot wide and minimal 5-foot curbs and sidewalks. There is no median barrier to separate opposing traffic or between the roadway and bicyclists and pedestrians. This section of SR 99 experiences high levels of traffic congestion and poor operations due to large traffic volumes and narrow lanes. These conditions also result in a high accident rate, especial[ly] head-on collisions."

> WSDOT, *Project Prospectus* (June 8, 1995).

> The existing bridge has 9.5-foot wide lanes with minimal 5-foot curb and sidewalks. There is no barrier or separation between opposing traffic or between the roadway and bicyclists and pedestrians. This creates a situation where head-on collisions have occurred and are an increasing

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 7 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

1  risk, as well as other accidents, due to the high traffic volumes and narrow lanes.

2  Demonstration Project Evaluation Criteria (undated, pre-1999).

3  3.26   The City and State were aware that traffic on the bridge typically exceeds the

4  40 miles per hour posted speed limit by 10 to 20 miles per hour.

5  3.27   As early as 1999, the City and State knew that the Aurora Bridge was subject

6  to a substantially higher rate of opposite direction accidents than the

7  statewide average. "Statewide average for opposite direction accidents

8  excluding ODLT on undivided highways is 4.85 vs 17.5% on the Aurora

9  Bridge." WSDOT TRACTS Inquiry entered by Pat Foley (March 10, 1999).

10

11  3.28   In the fall of 2002, the WSDOT explained:

12      1.      The existing travel lanes are very narrow, thereby contributing
to sideswipe accidents and reduced capacity. Wider lanes will significantly
13  improve the safety and performance of the roadway.
        2.      Currently, the bridge doesn't have a raised median to separate
14  opposing traffic, thereby contributing to a high severity accidents involving
vehicles crossing over the centerline.
15

16  SR 99 North Corridor Study Frequently Asked Questions (Fall 2002).

17  3.29   The WSDOT Northwest Washington Division, Planning and Policy Office

18  published the study, "Route Development Plan, State Route 99 North/Aurora

19  Avenue North," ("2003 Report") in March 2003, cataloging the unreasonably

20  unsafe conditions of SR 99 and Aurora Bridge. The City of Seattle signed the

21  2003 Report.

22  3.30   The 2003 Report found:

23      Over 1,500 accidents occurred on the SR 99 North study corridor
24  between 01/01/99 and 12/31/01—53 of these were disabling injuries and

25

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 8 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

eight were fatalities. The SR 99 North study corridor includes a WSDOT designated high accident corridor (with the highest number of disabling accidents in Puget Sound), six high accident locations, and 12 pedestrian accident locations [.]

2003 Report at 6.

The majority of the existing travel lanes in this area are narrow, especially on the Aurora Bridge (George Washington Memorial Bridge), contributing to sideswipe accidents and reducing traffic capacity. Just over 17% of the traffic accidents in the South Focus Area were sideswipe accidents, with 10% of those accidents occurring on the Aurora Bridge. The Aurora Bridge also lacks a center barrier to separate opposing traffic typically traveling at speeds exceeding the speed limit. The lack of a center barrier increases the risk for crossover/head-on traffic accidents.

Id. at 33.

**Lane Widths**

The existing lane widths for the SR 99 North corridor are listed in Table 1-2. A majority of existing lanes do not meet the current design standards of 12 feet or 11 feet for P-2 and P-6 roadways, respectively. The proposed lane widths with redevelopment are shown in Chapter 6, Long-Term Improvements. Not all of the proposed lane widths will meet the Design Manual criteria and will require design deviations or the approval of this Route Development Plan. These lane widths were agreed upon to improve traffic safety and mobility without significantly impacting neighboring properties.

Id. at 40.

3.31  The 2003 Report acknowledged that it was necessary to "[w]iden existing lanes, add median barrier, [and] construct new pedestrian facilities [.]" Id. at 50. Summarizing the safety hazards of SR 99 and the Aurora Bridge, the 2003 Report concluded:

The Aurora Bridge area has traffic congestion and is part of a High Accident Corridor (see Chapter 3: Accidents and Safety Issues). The existing Aurora Bridge has narrow lanes (9.5 feet), no median barrier, and no barrier separating the roadway and sidewalk. The lanes are so narrow that buses and other large vehicles sometimes straddle two lanes while traveling on the bridge. The combination of narrow lanes, lack of a

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

median barrier, and driver actions (speeding, following too close, etc) creates a risk for sideswipe, rearend and head-on traffic accidents. Over 80% of the accidents on the bridge are either sideswipe or rear-end accidents. The narrow lanes also reduce the traffic capacity of the roadway. Rear-end accidents also occur on the bridge due to congestion from the Raye Street intersection to the south and the N. 38th Street off-ramp to the north.

*Id*. At 62.

3.32    While the modern standard lane width is 11 to 12 feet, at the collision site the width of each the northbound and southbound center lanes of the Aurora Bridge are only 9 feet 5 inches (113 inches) wide.

3.33    Stretch Duck vehicles, including DUKW # 6, have the following dimensions: Width: 8.5 feet (102 inches) Height: 11.2 feet (134 inches) Length: 33 feet (396 inches)

3.34    DUKW # 6 was only eleven inches narrower than the lane in which it travelled.

3.35    The motor coach that DUKW # 6 crashed into also was 8 feet 5 inches wide.

3.36    Vehicles traveling on Seattle roadways may not exceed a width of 8.5 feet (102 inches). RCW 46.44; SMC 11.60.

3.37    Since 2003, State and City employees have repeatedly acknowledged the broad agreement" that improvements to the Aurora Bridge are necessary because the road is unreasonably unsafe:

> There is broad agreement that a median barrier is needed on the Aurora Bridge. WSDOT and City of Seattle have undertaken preliminary planning efforts to develop a project that will widen the bridge deck. As currently conceived the project is meant to provide

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE       – 10 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

wider and safer [ ] travel lanes along with a fixed median barrier to physically separate opposing traffic. WSDOT TRACTS Inquiry entered by Darrel Whyte (July 24, 2003) (emphasis added); WSDOT TRACTS Inquiry entered by Don Sims (Sept. 11, 2003) (same); WSDOT TRACTS Inquiry entered by Darrel Whyte (Oct. 12, 2007) (same).

3.38   Despite the "broad agreement" spanning decades "that a median barrier is needed on the Aurora Bridge", the City and State failed to install one.

3.39   The narrow lane width coupled with the absence of shoulders, effective speed limit, and lack of a median barrier increased the risk of severe lane departure and median crossover collisions on the bridge, particularly for large vehicles such as DUKW # 6.

3.40   The WSDOT classified the Aurora Bridge as a High-Accident Corridor more than a decade before the crash at issue here. The bridge is located within the third worst High Accident Corridor in the State.

3.41   According to Seattle Police Department records, between March 30, 1998 and October 19, 2015, there were 79 accidents causing injury on the Aurora Bridge, and 18 accidents with unknown injuries.

3.42   Seattle Department of Transportation collision records from January 1, 2005 through October 13, 2015 show that 126 accidents occurred on the Aurora Bridge between Raye Street and Bridge Way North, including eight (8) head-on collisions and 44 sideswipes.

3.43   According to the Washington State Patrol, in 2013 there were five (5) crashes caused when a vehicle crossed the center line of the Aurora

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 11 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

Bridge. There were four (4) such crashes in 2014 and six (6) in 2015, two of which occurred after the September 24, 2015 accident.

3.44  A Seattle Times analysis of federal records revealed that the bridge was the "tightest six-lane highway bridge in the state, some 4½-feet leaner than any of its peers[.]" In addition the article noted the bridge did not have a median divider like "most comparable bridges in the state." The Seattle Times, *Span's Narrow Lanes a Longtime Safety Concern* (Sept. 24, 2015).

3.45  The City and State were aware that the route adopted by RTD SEATTLE for DUKW vehicles involved traversing the Aurora Bridge and that it was unreasonably unsafe for such vehicles to be on the bridge given the bridge's narrow lane configuration, lack of a center median barrier, lack of shoulders, and effective speed limits.

3.46  Upon  information and belief, the City and State sanctioned RTD Seattle's use of the bridge as part of the company's touring operations since 1997 despite knowledge that the bridge is unreasonably unsafe, and in particular, for large vehicles, to travel.

3.47  The City and State had the power and authority to regulate the charter tour routes taken by RTD Seattle and DUKW vehicles on roadways within city limits.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 12 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA  98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

3.48  The City and State did not discourage, place restrictions upon, or prevent RTD SEATTLE from operating its DUKW vehicles on the dangerous Aurora Bridge.

3.49  Despite knowledge of the unreasonably unsafe conditions on the Aurora Bridge the City and State failed to use ordinary care to design and maintain the roadway in a reasonably safe condition for ordinary travel.

3.50  The Aurora Bridge presented and continues to present an inherently dangerous condition for drivers and the public, and the City and State have taken no corrective actions to protect drivers and the public from catastrophic collisions.

3.51  If the City and State had (a) had adequate lane width and a median barrier on the Aurora Bridge, (b) prohibited vehicles of a certain size, width, or weight from traveling on the bridge, including large and over-sized vehicles, or (c) taken other prudent safety measures, DUKW # 6 would not have been in nearly as severe as a crash.

3.52  As a causal result of the failure of the City and State to implement necessary safety measures on the dangerous Aurora Bridge, Eric Bishop sustained more serious injuries than he would have otherwise.

3.53  Both the City and the State had a duty to maintain SR 99 and the Aurora Bridge in a condition reasonably safe for travelers, such as Eric Bishop, his passengers, and the passengers on the motor coach.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 13 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA  98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

3.54   The State and City had a duty to mitigate the hazards present on the Aurora Bridge and are liable for their failure to take simple measures to mitigate the risk faced by those who were injured or killed going across the bridge on September 24, 2015. Such measures would have averted the disaster on that date. Instead, the City and State took no action in the decades that it knew SR 99 and the Aurora Bridge were unreasonably unsafe, even though a number of mitigating measures would have been easy and inexpensive, and, the City and State are liable for breaches of duty of ordinary care.

## IV.   LIABILITY

### A.  LIABILITY FOR PRODUCT DEFECT AGAINST RTDI

4.1   RTD International is a product manufacturer and product seller within the meaning of RCW 7.72 *et. seq.*

4.2   RTD International manufactured or remanufactured DUKW No. 6, the relevant product, which was not reasonably safe in construction. When the product left the RTD International manufacturing plant, it deviated in a material way from the design specifications or performance standards of the manufacturer, or deviated in a material way from otherwise identical units of the same product line. To wit, DUKW No. 6 had dangerous defects in the axle housing, resulting in fractures and other hazardous defects, that deviated from specifications, standards, and other products manufactured or remanufactured by RTD International.

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE        – 14 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

4.3   RTD International is strictly liable for all damages proximately caused by the fact that DUKW No. 6 was not reasonably safe in construction. RCW 7.72.030.

4.4   RTD International is liable for Cross-Claimant Eric Bishop's damages because DUKW No. 6 was not reasonably safe as designed. At time of manufacture or remanufacture, the likelihood that the product would cause Cross-Claimant Eric Bishop's harm or similar harms, and the seriousness of those harms, outweighed the burden on RTD International to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product. RCW 7.72.030.

4.5   RTD International is liable for Cross-Claimant Eric Bishop's damages because DUKW No. 6 was not reasonably safe because adequate warnings of instructions were not provided to RTD Seattle regarding maintenance and repair of DUKW No. 6, and the likelihood that the product would cause Cross-Claimant Eric Bishop's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate, and RTD International could have provided the warnings or instructions which would have been adequate.

**B. LIABILITY FOR NEGLIGENT OPERATIONS AGAINST RTDI**

4.6   RTD International, as the product seller of DUKW No. 6, is liable for negligence, including but not limited to the failure to implement, maintain and/

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE        – 15 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

1
2

or effectuate the proper operations, policies and procedures for warning and effectuating essential maintenance repairs to DUKW No. 6.

3
4
5
6
7
8
9
10

4.7     All parties to this matter admit that RTD International sent Service Bulletin's to RTD Seattle and other Duck Boat purchasers, licensees and/or joint venture/enterprise partners on an ongoing basis. The ongoing nature of the Service Bulletin's created and disseminated by RTD International created a duty to warn its purchasers, licensees and/or joint venture/enterprise partners of a danger with the DUKW 6. The facts are clear that ONLY RTD International had the necessary information and knowledge of the DUKW 6 to determine the hazardous condition.

11
12
13
14
15
16
17

4.8     The Service Bulletins, often authored by RTD International employee, Frank English, and sent on an ongoing basis, would advise of hazards found to be existing in a particular Duck vehicles and instruct Duck purchasers, licensees and/or joint venture/enterprise partners of the appropriate remedy to fix the hazardous condition of the vehicles. In this case, DUKW 6.was found to present a hazard in 2013 and a service bulletin was allegedly sent.

18
19
20
21
22
23
24
25

4.9     ONLY RTD International had the necessary information and knowledge of the DUKW 6 to determine the hazardous condition. In their course of business and operations, RTD International, assumed a duty to warn through the practice of disseminating service bulletins. However RTD International breached its ongoing duty to warn, communicate to RTD Seattle the dangers known by

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE      – 16 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

them regarding DUKW No. 6. These dangers caused the above-described crash and injuries to Eric Bishop.

4.10   RTD International further breached the duty they assumed by failing to establish appropriate operations that effectuate policies and procedures to insure that ongoing essential maintenance was communicated and performed.

4.11   RTD International therefore had an ongoing duty to establish policies and procedures for their operation to prevent the loss that occurred as described herein.

4.12   RTD International also failed to hire, train and supervise adequate and qualified personnel to establish and implement the policies and procedures required to effectuate required modifications on an ongoing basis. RTD International's operational failure to hire, train and supervise personnel and a system to monitor the completion of REQUIRED service on an ongoing basis caused the loss described herein.

4.13   RTD International was negligent in failing to comply and assure compliance with the safety standards of WAC 480-30-221, including but not limited to the requirement that operators must "Maintain all motor vehicles in a safe and sanitary condition" and "Ensure that vehicles are free of defects likely to result in an accident or breakdown."

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE        – 17 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA  98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

1

### C. LIABILITY FOR NEGLIGENCE AGAINST CITY OF SEATTLE AND STATE OF WASHINGTON

2

4.14   City of Seattle and State of Washington had and have a duty to exercise

3

ordinary care in the design, maintenance, and operation of their roadways

4

such that they are reasonably safe for ordinary travel.

5

4.15   City of Seattle and State of Washington failed to design, maintain, and operate

6

the SR 99 Aurora Bridge in a condition that was reasonably safe for ordinary

7

travel.

8

4.16   City of Seattle and State of Washington failed to take any corrective action to

9

protect drivers and the public from the inherently dangerous conditions on the

10

SR 99 Aurora Bridge.

11

12

4.17   Prior to this incident, City of Seattle and State of Washington had received

13

reports of a history of incidents and collisions relating to the inadequate lane

14

width, lack of median barrier, and speed issues on the SR 99 Aurora Bridge.

15

These conditions rendered the bridge unsafe for ordinary use and unsafe for

16

tourist novelty vehicle use.

17

4.18   Because of the long history of incidents on the SR 99 Aurora Bridge, the police

18

reports filed regarding these incidents, the studies performed and resulting

19

recommendations from the governmental entities themselves, City of Seattle

20

and State of Washington had sufficient notice that the SR 99 Aurora Bridge

21

was unsafe for ordinary use, unsafe for tourist novelty vehicle use, and had

22

sufficient and reasonable opportunity to correct these hazardous and unsafe

23

conditions.

24

25

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE     – 18 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

4.19   In spite of the history of deficiencies and dangers existing on the SR 99 Aurora Bridge, Defendants City of Seattle and State of Washington have taken no action to correct the conditions stemming from inadequate lane width, lack of median barrier, and/or appropriate posted speed.

4.20   The failure of Defendants City of Seattle and State of Washington to provide a reasonable safe roadway at the SR 99 Aurora Bridge constituted tortious conduct.

4.21   The tortious conduct of all Defendants, as described above, was the proximate cause of the subject incident, the injuries to Plaintiff Eric Bishop, and his resulting losses.

4.22   Defendants are jointly and severally liable because their actions proximately caused the incident.

## V.   DAMAGES

5.1   As a direct and proximate result of the above acts, omissions, and other conduct of Defendants, Plaintiff Eric Bishop has suffered and continues to suffer physical injuries, disability, pain and suffering, emotional trauma, loss of enjoyment of life, and other general damages in an amount to be proven at trial.

5.2   As a direct and proximate result of the above acts, omissions, and other conduct of Defendants, Plaintiff Eric Bishop has been required to seek various medical treatments and will continue to require medical treatments in the

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,
AND CITY OF SEATTLE     – 19 –

LAWRENCE KAHN LAW GROUP
135 LAKE STREET, SUITE 265
KIRKLAND, WA 98033
(425) 453-5679 - TEL
(425) 453-5685 - FAX

1   future, as well as other special damages, all in amounts to be proven at the
2   time of trial.

3   5. 3   Although Washington has the most significant relationship to the conduct
4           underlying the negligence and products liability claims, RTD International
5           committed conduct in its state of citizenship, Missouri, that was outrageous
6           because of the RTD International's reckless indifference to the rights of others,
7           including the plaintiff in this case, and Missouri possess the interest in
8           punishing and deterring such conduct. Accordingly, RTD International is liable
9           for punitive damages under Missouri law. *Singh v. Edwards Lifesciences*
10          *Corp.*, 151 Wn. App. 137, 210 P. 3d 337 (2009).

11  5.4    In addition or in the alternative, RTD International committed acts of willful
12          misconduct or wantonness in its other state of citizenship, Georgia, and
13          Georgia possesses the interest in punishing and deterring such conduct.
14          Accordingly, RTD International is liable for punitive damages under Georgia
15          law. *Singh v. Edwards Lifesciences Corp.*, 151 Wn. App. 137, 210 P. 3d 337
17          (2009).

18  5.5    Plaintiff Eric Bishop has incurred other damages to be proven at the time of
19          trial.

20                    **VI.    PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and
22  severally as follows:

23  6.1    For special and general damages in amounts to be proven at trial;

25  ERIC BISHOP COMPLAINT AGAINST              LAWRENCE KAHN LAW GROUP
    RTD INT'L, STATE OF WASHINGTON,            135 LAKE STREET, SUITE 265
    AND CITY OF SEATTLE      – 20 –            KIRKLAND, WA 98033
                                               (425) 453-5679 - TEL
                                               (425) 453-5685 - FAX

6.2   For punitive damages against Defendant Ride the Duck International under Missouri and/or Georgia law;

6.3   An order requiring Defendants City of Seattle and State of Washington to abate this public nuisance by installing a median barrier on the SR 99 bridge;

6.4   An order requiring Defendants City of Seattle and State of Washington to abate this public nuisance by reconfiguring the SR 99 bridge to increase lane width to a reasonable and acceptable safe configuration;

6.5   For costs and disbursements;

6.6   For statutory attorney fees;

6.7   If Defendants bring any frivolous or unfounded defenses, for attorneys' fees and costs pursuant to RCW 4.84.185 and/or Rule 11 of the Superior Court Civil Rules;

6.8   For statutory interest on the judgment from the date judgment is entered until paid in full;

6.9   For prejudgment interest on the special damages;

6.10  For prejudgment interest on the liquidated damages; and

6.11  For such other and further relief as the Court may deem just and equitable.

DATED this ___30TH___ day of ___June___, 2017.

LAWRENCE KAHN LAW GROUP, PS          SULLIVAN LAW GROUP, PLLC

_____          _/s/Brian Sullivan_____
Lawrence M. Kahn, WSBA # 29639          Brian M. Sullivan, WSBA # 38066
Attorneys for Plaintiff Bishop               Attorneys for Plaintiff Bishop

ERIC BISHOP COMPLAINT AGAINST
RTD INT'L, STATE OF WASHINGTON,                    LAWRENCE KAHN LAW GROUP
AND CITY OF SEATTLE      – 21 –                    135 LAKE STREET, SUITE 265
                                                   KIRKLAND, WA 98033
                                                   (425) 453-5679 - TEL
                                                   (425) 453-5685 - FAX